UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TYRONE MCGHEE, ) | Case No. 1:07CV1408 |
| ) | |
| Petitioner, ) | JUDGE DONALD C. NUGENT |
| ) | Magistrate Judge George J. Limbert |
| vs. ) | |
| ) | |
| KHELLEH KONTEH, Warden, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Respondent. ) | |

On May 15, 2007, Tyrone McGhee ("Petitioner"), through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner is a prisoner at the Toledo Correctional Institute seeking relief from his Ohio state court conviction for engaging in a pattern of corrupt activity. *Id*. On May 30, 2007, this case was assigned to the undersigned for a Report and Recommendation. ECF Dkt. #5. On June 22, 2007, Khelleh Konteh ("Respondent") filed a return of writ. ECF Dkt. #7. On June 28, 2007, Petitioner, through counsel, filed a traverse. ECF Dkt. #8. For the following reasons, the undersigned recommends that the Court DENY Petitioner's federal habeas corpus petition and dismiss it with prejudice.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. State Trial Court Proceedings

On January 19, 2005, the Shelby County, Ohio Grand Jury issued an indictment charging Petitioner with: one count of possession of drugs in violation of Ohio Revised Code § 2925.11. ECF Dkt. #7, Exhibit 1.

On November 22, 2005, the Shelby County Grand Jury indicted Petitioner for three counts of trafficking in crack cocaine in violation of Ohio Revised Code § 2925.03 (Counts One, Two and Four); one count of trafficking in crack cocaine within the vicinity of a school in violation of Ohio Revised Code § 2925.03 (Count Three); trafficking in crack cocaine within the

vicinity of a juvenile in violation of Ohio Revised Code § 2925.03 (Count Five); one count of possession of crack cocaine in an amount of ten to twenty-five grams in violation of Ohio Revised Code § 2925.11 (Count Six); one count of possession of powdered cocaine in an amount of five to ten grams in violation of Ohio Revised Code § 2925.11 (Count Seven); one count of possession of crack cocaine in an amount of one to five grams in violation of Ohio Revised Code § 2925.11 (Count Eight); and one count of engaging in a pattern of corrupt activity in violation of Ohio Revised Code § 2923.32 (Count Nine). ECF Dkt. #7, Exhibit 3. The indictment included a charge that Petitioner owned a certain vehicle and used or intended to use that vehicle in the commission of a felony drug abuse offense or act in violation of Ohio Revised Code § 2925.42. *Id*. Both of Petitioner's criminal cases were consolidated after the trial court granted the State's motion to consolidate. ECF Dkt. #7, Exhibits 5 and 6.

On June 17, 2005, Petitioner, with counsel, entered into a plea agreement whereby he would plead guilty to engaging in a pattern of corrupt activity and forfeit money and property and the State would dismiss the predicate offenses and recommend a sentence of imprisonment of six years . ECF Dkt. #7, Exhibit 7. On the same date, the Shelby County Common Pleas Court issued a judgment entry accepting the guilty plea. ECF Dkt. #7, Exhibit 8.

On September 30, 2005, the trial court sentenced Petitioner to ten years of imprisonment, finding that Petitioner committed the worst form of the offense and posed the greatest likelihood of recividism. ECF Dkt. #7, Exhibit 9. The judge also ordered Petitioner to pay restitution, to forfeit the property agreed to by the parties, and to serve five years of post-release control. *Id*.

### B. First Direct Appeal

On October 13, 2005, Petitioner, through counsel, filed a notice of appeal in the Third District Court of Appeals for Ohio and raised the following assignments of error in his memorandum in support:

> I.. The trial court erred in sentencing the Defendant by imposing a maximum sentence, in violation of R.C. § 2929.14(C).
>
> II. Sentencing in this case violated the *Apprendi* doctrine as explained in *Blakely v. Washington* and was therefore unconstitutional.

> III. The sentence was not consistent with other sentences for other similarly-situated offenders.

ECF Dkt. #7, Exhibit 11.  In March 2006, the Third District Court of Appeals offered the parties an opportunity to supplement their memoranda in light of the then-recent decision, *State v. Foster,* 845 N.E.2d 470 (2006).  ECF Dkt. #7, Exhibits 12, 13, 14.  Both parties filed supplemental memoranda.  ECF Dkt. #7, Exhibits 13, 14.

On April 17, 2006, the Third District Court of Appeals reversed Petitioner's conviction and remanded the case for further proceedings.  ECF Dkt. #7, Exhibit 15.  The Court of Appeals held that pursuant to Foster, Petitioner's sentence was void because it was based upon unconstitutional statutes. *Id*. at 3-4.  Since Petitioner's second assignment of error required reversal, the appellate court declined to address Petitioner's remaining assignments of error. *Id*.

### C. Second Trial Court Adjudication

On May 9, 2006, the trial court held a resentencing hearing.  ECF Dkt. #7, Exhibit 16.  The trial court sentenced Petitioner to the same sentence that it had previously imposed, which included ten years of imprisonment, restitution and forfeiture.  *Id*. at 2.

### D. Second Direct Appeal

On May 17, 2006, Petitioner, through the same counsel for his first appeal, filed a notice of appeal in the Third District Court of Appeals and presented the following assignment of error in his memorandum in support:

> 1. The sentence imposed on remand was imposed pursuant to a judicially-created version of Ohio sentencing laws that, applied retroactively to Mr. McGhee, violated his right to freedom from ex post-facto laws.

ECF Dkt. #7, Exhibits 17, 18.  On October 2, 2006, the appellate court affirmed the conviction.  ECF Dkt. #7, Exhibit 21.

On November 13, 2006, Petitioner, through the same counsel, filed a notice of appeal in the Supreme Court of Ohio.  ECF Dkt. #7, Exhibit 22.  Petitioner filed a memorandum in support of jurisdiction raising one proposition of law:

> 1. Ohio Sentencing Law is Unconstitutional for Violation of the Right to Due Process.

ECF Dkt. #7, Exhibit 23.  On February 23, 2007, the Supreme Court of Ohio summarily dismissed Petitioner's appeal as not involving any substantial constitutional question.  ECF Dkt. #7, Exhibit 25.

### E.  Federal Habeas Corpus Petition

On May 25, 2007, Petitioner, through counsel, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner presents one ground for relief:

> Ground for Relief No. 1:
> The sentence imposed in this case, of a maximum sentence, was unconstitutional for violation of his rights of presentment to a grand jury, trial by jury, and proof beyond a reasonable doubt of essential facts without which such sentence could not be imposed.
>
> Supporting Facts:
> Mr. McGhee was indicted for a number of drug trafficking offenses, all grouped together, as predicate offenses for one count of Engaging in a Pattern of corrupt activities.  Pursuant to plea agreement, the State recommended a sentence of six (6) years of incarceration.  The trial court agreed to this recommendation.  At sentencing, however, the trial court imposed a maximum sentence of ten (10) years of incarceration, finding that Mr. McGhee was one of the worst offenders.  The State, pursuant to plea agreement, had obviously neither alleged nor offered facts to support such a finding.
>
> After appeal and the Foster remand, the trial court no longer had any duty to even support its sentence with factual grounds and reimposed the same sentence.  At this second sentencing hearing, the defense had offered evidence from the Ohio Department of Rehabilitation and Correction to the effect that the negotiated six (6) years of incarceration was consistent with similar offenders and similar circumstances and was the average sentence in Ohio for a multiple-count indictment including EPCA as one of the charges.

ECF Dkt. #1 at 6.  On May 30, 2007, this case was assigned to the undersigned for a Report and Recommendation.  ECF Dkt. #5.  On June 22, 2007, Respondent filed a return of writ.  ECF Dkt. #7.  On June 28, 2007, Petitioner filed a traverse.  ECF Dkt. #8.

## II.  PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the

merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not an issue in this case. *See* ECF Dkt. #1, 10, 16. Respondent does, however, contend that Petitioner has procedurally defaulted his claimed ground for relief. ECF Dkt. #7 at 7-9.

### B. Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of

-5-

constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.) cert. denied, 509 U.S. 907 (1993)(quotation omitted).

Unless an exception applies, the Court must dismiss a petition for lack of exhaustion if it contains at least one issue that was not presented to the state courts so long as a remedy is still available for the petitioner to pursue in the state courts. *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C. Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.

*Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1) whether the petitioner failed to comply with an applicable state procedural rule;

(2) whether the state courts actually enforced the state procedural sanction;

(3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

As set forth in the last factor of the *Maupin* test, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D.Ohio, 2004). The above standards apply to the Court's review of Petitioner's claims.

**III**.     **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 15, 2007, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
>> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court

-8-

may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

    A.    Decisions of lower federal courts may not be considered.

    B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

    C.    The state court decision may be overturned only if:

        1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,'[existing at the time of the petitioner's direct appeal] or;

        2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

        3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

        4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

    D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

    E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## **IV.     PERTINENT LAW**

In *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.E.2d 403 (2004), the United States Supreme Court clarified its earlier holding in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* had held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490. The Court in *Blakely* found that the sentence imposed by the trial court violated the Sixth Amendment when it sentenced the defendant to more than the statutory maximum by

finding that the defendant had acted with deliberate cruelty, when that fact was not admitted by the defendant nor found by a jury. *Blakely*, 542 U.S. at 303. The *Blakely* Court held that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. See Ring, supra*, at 602, 122 S.Ct. 2428 (" 'the maximum he would receive if punished according to the facts reflected in the jury verdict alone' " (quoting *Apprendi, supra*, at 483, 230 S.Ct. 2348; *Harris v. United States*, 536 U.S. 545, 563, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002)(plurality opinion)(same); cf. *Apprendi,* supra, at 488, 120 S.Ct. 2348 (facts admitted by the defendant). In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

*Id.* at 303-304.

Thereafter, in light of *Blakely*, the Supreme Court of Ohio decided *State v. Foster* and found that several provisions of Ohio's felony sentencing statutes violated the Sixth Amendment to the United States Constitution. 109 Ohio St.3d 1, 29, 845 N.E.2d 470 (2006). The court found that the following statutes required judicial findings of fact not found by a jury or admitted by the defendant and were therefore an unconstitutional violation of *Blakely*: Ohio Revised Code § 2929.14(B) and (C), § 2929.19(B)(2) (imposing sentence greater than maximum term), § 2929.14 (E)(4) and § 2929.41(A)(imposing consecutive sentences), and § 2929.14(D)(2)(b)(repeat-violent-offender enhancement) and (D)(3)(b)(major drug offender enhancement).

The Supreme Court of Ohio thereafter pondered the remedy for these *Blakely*-deficient statutes after finding that "Ohio's felony-sentencing structure may be severely wounded, but it is not fatally unsound." *Foster*, 845 N.E.2d at 494. The court decided that the best remedy was to follow the United States Supreme Court's remedy in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and sever the *Blakely*-offending portions of the Ohio felony-sentencing statutes. In *Booker*, the United States Supreme Court applied *Blakely* and *Apprendi* in holding that the federal statutory sentencing guidelines were unconstitutional if they were applied in a mandatory manner. *Id.* The *Booker* Court held that the Sentencing Guidelines are now advisory in all cases, including those not involving a Sixth Amendment violation. *Id.* at 268.

The *Booker* Court remedied the situation by severing those parts of the federal statutes that offended *Blakely* and making the guidelines advisory. *Id.*

## V. ANALYSIS

Respondent argues that the Court should dismiss the instant case based upon procedural default. ECF Dkt. #7. However, the undersigned finds that the case is without merit and it is therefore unnecessary to address the issue of procedural default. The United States Supreme Court has held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A. Ex Post Facto Clause

The undersigned notes that while Petitioner argues a Due Process Clause violation in his federal habeas corpus petition, he appears to add an *ex post facto* violation in his lengthy traverse. ECF Dkt. #s 1, 8. Generally, a traverse is an improper document in which to raise new issues that were not raised in a petitioner's original petition for federal habeas relief because it does not notify the State of the claim or allow the State an opportunity to oppose it. *Taylor v. Mitchell*, 296 F.Supp.2d 784, 798 (N.D. Ohio 2003), citing *Cacoperdo v. Demonstenes*, 37 F.3d 504, 507 (9th Cir. 1994) and *Jack v. Randall*, No. C-2-99-947, 2000 WL 1456992 at *7 (S.D. Ohio June 20, 2000).

Nevertheless, even reviewing the assertion, it is unclear from Petitioner's traverse whether he presents an argument based upon the Ex Post Facto Clause of the United States Constitution or whether he advances an *ex post facto*-type claim under the Due Process Clause of the United States Constitution. ECF Dkt. #8 at 16-21. Under either type of assertion, the Court should reject Petitioner's claim.

-12-

Petitioner appears to contend that the remedial portion of *Foster* erased the presumption under the felony-sentencing statutes that benefitted the accused because Ohio Revised Code § 2929.14(C) as it existed before *Foster* afforded no discretion to sentencing courts to impose the maximum sentence unless the judge made the specific findings of fact required by the statute. ECF Dkt. #8 at 20. Now, with the application of *Foster*, the sentencing court may impose the maximum term in its discretion without making any findings of fact. *Id.* at 21. Thus, Petitioner concludes, this elevation in sentencing from the presumed minimum sentence without specific findings of fact constitutes the infliction of a greater punishment than the law allowed for the crime when it was committed. *Id*.

Article I, Section 10 of the United States Constitution provides that no state shall pass *ex post facto* laws. U.S. Const. art. I, §10. The Ex Post Facto Clause prohibits the following types of laws as identified by Justice Chase in dictum:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Calder v. Bull,* 3 Dall. 386, 390, 1 L.Ed. 648 (1798) ( *seriatim* opinion of Chase, J.) (emphasis deleted).

*Rogers v. Tennessee*, 532 U.S. 451, 456, 121 S.Ct. 1693, 1697, 149 L.Ed.2d 697 (2001), quoting *Calder v. Bull*, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)(seriatim opinion of Chase, J.).

The Ex Post Facto Clause of the United States Constitution by its very text applies only to a limitation on the powers of the legislature and not to judicial decisions. *Rogers v. Tennessee*, 523 U.S. 451, 456, 121 S.Ct. 1693, 149 L.E.2d 697 (2001). In *Rogers*, the Supreme Court held:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process thus would circumvent the clear constitutional text. It also would evince too little regard for the important

> institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

*Id*. at 460.

Thus, to the extent that Petitioner presents an argument that the retroactive application of the *Foster* Court's remedy to his resentencing violated the Ex Post Facto Clause, the Court should reject his claim because the Clause does not apply to judicial decisions. *Id.*

### B.     Due Process

While rejecting an Ex Post Facto Clause application to judicial decision-making, the *Rogers* Court specifically held that "limits on judicial decision-making are inherent in the notion of due process." *Rogers*, 523 U.S. at 456. The Court elaborated that:

> Deprivation of the right to fair warning...can result both from vague statutory language and from an unforeseeable and retroactive judicial expansion of statutory language that appears narrow and precise on its face. *Bouie v. City of Columbia,* 378 U.S., at 352, 84 S.Ct. 1697. For that reason, we concluded that "[i]f a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' [the construction] must not be given retroactive effect." *Id.,* at 354, 84 S.Ct. 1697 (quoting J. Hall, General Principles of Criminal Law 61 (2d ed.1960)).

*Id.* at 457-458. In *Barton*, the Sixth Circuit interpreted *Rogers* and held that "when addressing ex post facto-type due process concerns, questions of notice, foreseeability, and fair warning are paramount." 455 F.3d at 655, citing *Rogers*, 532 U.S. at 459. In instances where a defendant was sentenced beyond the advisory guideline range following *Booker*, the Sixth Circuit has repeatedly rejected the argument that the retroactive application remedy of *Booker* violates the Due Process Clause and ex post facto-type due process concerns. *See United States v. Barton*[1],

---

[1] In *Barton*, the Sixth Circuit explained:
> When the Guidelines were mandatory, defendants faced the very real prospect of enhanced sentences caused by changes in the Guidelines or changes in the interpretation of Guidelines that occurred after they had committed their crimes. Now that the Guidelines are advisory, the Guidelines calculation provides no such guarantee of an increased sentence, which means that the Guidelines are no longer akin to statutes in their authoritativeness. As such, the Ex Post Facto Clause itself is not implicated.

455 F.3d at 657.

-14-

455 F.3d 649, 657 (2006); *United States v. Anderson*[2], 187 Fed. App. 517, 2006 WL 1866348, 2006 Fed. App. 0455N (6th Cir. June 29, 2006).

Applying the above, the undersigned finds that Petitioner was afforded sufficient notice, fair warning, and process. Therefore, the undersigned recommends that the Court deny Petitioner's ground for relief.

The Court should first find that Petitioner had sufficient notice and fair warning because he was aware of the potential penalty that he faced both before or after *Foster*. At his initial guilty plea hearing and sentencing, Petitioner knew that the potential maximum penalty he faced was ten years pursuant to Ohio Revised Code § 2929.14(A)(1) for a felony of the first degree. The plea agreement that Petitioner signed with counsel indicated as much. ECF Dkt. #7, Exhibit 7. Petitioner also knew that the trial court had the discretion to impose a ten-year sentence so long as he made findings of fact consistent with Ohio Revised Code § 2929.14(C). After *Foster*, Petitioner knew that the trial court retained the discretion to impose up to a ten-year sentence. Thus, both before and after *Foster*, Petitioner was on notice of the potential maximum penalty and of the trial court's discretion to impose that penalty. Therefore, even following *Foster*, Petitioner had sufficient notice and fair warning of the potential maximum penalty that the judge could impose.

Moreover, Petitioner received the process that he was due after the retroactive application

---

[2] The Sixth Circuit referred to its prior holding in *United States v. Ediger*, No. 05-5350, 166 Fed. Appx.218, 2006 WL 328010 (6th Cir. 2006), unpublished, and cited to numerous cases in other Circuits in rejecting Anderson's argument that the court violated the prohibition against *ex post facto* laws because it applied *Booker* to his sentence. The Court held:

> In *Booker,* the Supreme Court held that (1) the constitutional rule announced in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) applies to the Guidelines; and (2) the Guidelines are no longer mandatory, but advisory. *Booker*, 543 U.S. at 220, 125 S.Ct. 738. The Supreme Court clearly instructed that both holdings should be applied to all cases on direct review. *Id*. at 268, 125 S.Ct. 738. This Court must apply both portions of the *Booker* holding, including the remedial portion, to Anderson's sentence which does not violate the *ex post facto* clause.

*Anderson*, 2006 WL 1866348 at *3.

of *Foster* to his resentencing. The issue hinges on whether the statutory maximum for *Apprendi* purposes (*i.e.*, the maximum penalty that a judge can impose without finding additional facts besides prior convictions) was any greater than the potential maximum penalty for which Petitioner had notice that the judge could impose pre-*Foster*.

Prior to *Foster*, the trial court made additional findings of fact consistent with Ohio Revised Code § 2929.14(C) and sentenced Petitioner to the maximum sentence available under Ohio Revised Code § 2929.14(A)(1): ten years. Under constitutional law as Ohio courts interpreted it at the time, Petitioner was not entitled to presentment to the grand jury, trial by jury or proof beyond a reasonable doubt as to the additional findings of fact required by Ohio Revised Code § 2929.14(C).

Now, Petitioner alleges that his due process rights were violated because he has a right to presentment to a grand jury, trial by jury and proof beyond a reasonable doubt under the new law arising from *Foster*. After *Foster*, the elements of the crime for which Petitioner was charged were unaffected; therefore, he had no right to re-presentment to a grand jury or trial by jury as to the elements of the crime. Further, Petitioner's claim of a right to presentment to a grand jury and trial by jury regarding sentencing factors lacks merit because, following *Foster*, the trial judge maintains discretion under Ohio Revised Code § 2929.14(A)(1) to impose a sentence in the range of three to ten years for a first degree felony based upon facts admitted by the defendant or found by a jury. Therefore, the statutory maximum for *Apprendi* purposes is ten years, as Petitioner believed that it was before *Foster*.[3] Since the *Foster* decision does not change the elements necessary to convict Petitioner or the potential maximum sentence that Petitioner faced for a first degree felony, *Foster* does not raise an ex post facto-type due process violation. Moreover, the trial judge's application of *Foster* to Petitioner's case in particular did

---

[3] *See* ECF Dkt. #7, Exhibit 7 at 14. As discussed above, judge-found facts were necessary in order to impose a ten-year sentence; however, the United States Supreme Court had not yet recognized that such a sentencing scheme violated the Sixth Amendment. Therefore, Petitioner was on notice pre-*Foster* that the the judge could impose a ten-year sentence.

-16-

not violate *Apprendi* because he did not sentence Petitioner beyond the statutory maximum.[4] Accordingly, the Court should find that Petitioner's right to due process was not violated by retroactively applying *Foster* to his resentencing.

## VI. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court find that Petitioner's grounds for relief lack merit. Accordingly, the undersigned further recommends that the Court dismiss the instant § 2254 federal habeas corpus petition with prejudice.

Date: January 25, 2008                                     */s/George J. Limbert*
                                                                          George J. Limbert
                                                                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[4] As discussed above, Petitioner's argument is that the statutory maximum changed. This argument lacks merit because both before and after *Foster*, Petitioner was on notice that the trial court had the discretion to impose the maximum sentence of ten years.